**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **HANC & BRUBAKER HOLDINGS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 1526** |
| | ) | |
| **NXT LVL SERVICES, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Hanc & Brubaker Holdings, LLC and several other corporate entities owned by Brian Hanc and Rockne Brubaker have sued Michael Walding, and three corporate entities owned by Walding, for fraudulently procuring consulting fees. The plaintiffs assert claims under the Illinois Consumer Fraud and Deceptive Practices Act (ICFA) and for fraudulent misrepresentation, unjust enrichment, conversion, and breach of contract. The defendants contend that all the plaintiffs' claims must be arbitrated pursuant to their consulting agreements. The defendants have moved to dismiss for improper venue or, in the alternative, to stay proceedings and compel arbitration. They also have moved in the alternative to dismiss the claims of plaintiff Parkcam Ecom, LLC, a non-signatory to the consulting agreement, for failure to state a claim. For the reasons stated below, the Court grants the defendants' motion to dismiss except with respect to Parkcam's claims.

## Background

The plaintiffs allege that the defendants "engaged in a scheme" to fraudulently "induce prospective clients to pay large consulting fees." 2d Am. Compl. ¶ 241. The defendants purport to "acquir[e] and manag[e] ecommerce retail stores on Amazon and Walmart's internet platforms on behalf of investors," but they fail to do so. *Id.* ¶¶ 29, 31, 33–34, 241. This results in the stores being removed from Amazon or Walmart, but the defendants retain the fees. *Id.* ¶ 241. Except for Parkcam, each plaintiff is a signatory to an "E-Commerce Consulting Agreement" with Walding and one or more of his corporate entities. *Id.* ¶¶ 65, 153. The Agreements required the defendants to procure and maintain the plaintiffs' Amazon and/or Walmart e-commerce stores in exchange for a one-time consulting fee and the greater of $300 per month or thirty-five percent of the plaintiffs' net profit.

Pertinent to the defendants' motion, each Agreement states in section 13(E):

> Dispute Resolution - Except where otherwise expressly set forth in this Agreement, any dispute or claim arising out of or relating to this Agreement shall only be resolved by binding arbitration. The arbitration of any dispute or claim shall be conducted in accordance with the American Arbitration Association ("AAA") rules, as modified by this Agreement, which shall take place in Miami-Dade County, Florida.

*Id.*, Ex. 3–6 at 8, Ex. 7–9 at 6. In section 13(H), the Agreements further state, in relevant part:

> Governing Law; Jurisdiction - This Agreement, the negotiations thereunder, and performance thereof shall be interpreted, construed and enforced in all respects in accordance with the laws of the State of Florida without reference to principles of conflicts of laws. Client hereby irrevocably consents to the personal jurisdiction of and agrees that the sole venue for any dispute arising in connection to this Agreement shall be the courts of competent jurisdiction (State and federal) located within Miami-Dade County, Florida. Client agrees not to commence or prosecute any such action, claim or proceeding other than in such aforementioned

courts.

*Id.*

Parkcam did not sign a written agreement. Rather, Parkcam alleges it entered into two oral agreements with the defendants. In one alleged oral contract, the defendants agreed with Parkcam and plaintiff Hanc Holdings, LLC to transfer an aged e-commerce store to Parkcam after the theft of Hanc Holdings's store. Hanc Holdings is the owner of Parkcam, and Hanc is the sole member of both companies. The first oral agreement provided that the defendants would receive thirty percent of the store's profits. In the second alleged oral agreement, the defendants agreed to procure an e-commerce store for Parkcam after Walmart rejected plaintiff Redstone Ecom, LLC's store. Redstone is another company owned by Hanc Holdings with Hanc as the sole member. The defendants do not contend that either alleged oral agreement included an arbitration provision.

## Discussion

The defendants contend that all the plaintiffs have agreed to arbitrate their claims in Florida under the Agreements, and they have moved to dismiss the plaintiffs' complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, to stay proceedings and compel arbitration. The defendants also contend that Parkcam is bound to the Agreements even though it did not sign a written agreement. The defendants have moved in the alternative to dismiss Parkcam's claims for failure to state a claim under Rule 12(b)(6).

### A. Improper venue

Under the Federal Arbitration Act, a written arbitration agreement contained in a

contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As such, "whether the parties agreed to arbitrate" is determined by "ordinary state-law principles" governing contracts. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) ("[S]tate law governs whether a contract with an arbitration agreement is enforceable[.]" (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009))). "A court must enforce an arbitration clause where (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022).

Although the Agreements specify that Florida law applies, both parties have cited Illinois caselaw and cases from this district without mentioning Florida law or suggesting that the choice-of-law question is outcome-determinative on any relevant issue. The Court accordingly applies Illinois law "notwithstanding the choice-of-law provision in the parties' own agreement." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011) (applying Illinois law "to the question whether the parties agreed to submit disputes to arbitration" where the parties did not ask "to apply any law other than that of Illinois").

**1. Agreement to arbitrate**

The plaintiffs contend that the arbitration clause in section 13(E) and the forum selection clause in section 13(H) of the Agreements conflict, rendering the Agreements ambiguous regarding whether the parties agreed to arbitrate. "[W]hether a contract is ambiguous is a question of law." *Cent. Illinois Light Co. v. Home Ins. Co.*, 213 Ill. 2d

141, 154, 821 N.E.2d 206, 214 (2004). "It is fundamental in contract construction that, if possible, effect must be given to all of the language so that provisions which appear to be conflicting or inconsistent may be reconciled and harmonized." *In re Halas*, 104 Ill. 2d 83, 92, 470 N.E.2d 960, 964 (1984).

Courts have frequently held that "there is no irreconcilable inconsistency" between arbitration and forum selection provisions because "arbitration awards are not self-enforceable" and thus "the forum selection clause reasonably can be interpreted as dictating the *location* of any action that might be necessary after arbitration in order to enforce the award." *Geldermann, Inc. v. Stathis*, 177 Ill. App. 3d 414, 421, 532 N.E.2d 366, 370 (1988) (citing *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987), *abrogated on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988)); *Johnson v. Waterstone Mortg. Corp.*, No. 19 C 0652, 2020 WL 7695430, at *2 (E.D. Wis. Jan. 7, 2020) ("Because it is possible to reconcile the [forum selection and arbitration] clauses without discarding one or the other, there is not ambiguity sufficient to nullify the parties' agreement to arbitrate."); *Applications Software Tech. LLC v. Kapadia*, No. 18 C 822, 2018 WL 3122173, at *3 (N.D. Ill. June 26, 2018) ("Since the provisions can be reconciled by so qualifying the forum-selection clauses, it is the Court's view that the arbitration provision should be enforced as more principal and specific.").

Similarly, in this case, the Agreements are not ambiguous because section 13(H) can be read in harmony with section 13(E) as providing the location for any action necessary to compel arbitration or enforce an arbitration award. Despite noting that "[c]ontract law . . . supports giving meaning to every clause of a contract," Pls.' Resp.

Br. at 5, the plaintiffs do not propose an alternative interpretation to reconcile the two provisions. The plaintiffs' contention that ambiguity should "be decided against the drafter of the contract," *id.*, is an interpretive doctrine only to be employed as a "last resort"; it does not apply in this case because the contract is unambiguous. *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 31, 193 N.E.3d 182, 195; *see also ValuePart, Inc. v. Farquhar*, No. 14 C 3004, 2014 WL 4923179, at *6 n.3 (N.D. Ill. Sept. 29, 2014) (rejecting the plaintiff's argument to apply the same rule where the court held that a contract's mandatory arbitration clause applied despite the presence of a forum selection clause). The Court accordingly finds that the plaintiffs who are signatories to the Agreements have agreed to mandatory arbitration.

**2. Unconscionability**

The plaintiffs also contend that the Agreements are unenforceable because they are unconscionable. Although the defendants argue that the issue of unconscionability should be decided by the arbitrator because the Agreements incorporate by reference the AAA rules, this Court has previously rejected this contention. *See Taylor v. Samsung Elecs. Am., Inc.*, No. 19 C 4526, 2020 WL 1248655, at *4 (N.D. Ill. Mar. 16, 2020) ("It is hard to see how an agreement's bare incorporation by reference of a completely separate set of rules that includes a statement that an arbitrator has authority to decide validity and arbitrability amounts to 'clear and unmistakable' evidence that the contracting parties agreed to delegate those issues to the arbitrator and preclude a court from answering them."). The Court continues to believe that it got this right in *Taylor*.

*Taylor* aside, the plaintiffs' unconscionability argument fails. The plaintiffs cite

both procedural unconscionability, which focuses on whether a contractual term is unduly difficult to understand and/or extracted by one-sided bargaining power, and substantive unconscionability, which involves consideration of whether the term is inordinately one-sided. *See Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 535 (7th Cir. 2011). The plaintiffs' contentions on both points, however, are perfunctory and unsupported.

Regarding procedural unconscionability, the plaintiffs argue, without citing any legal authority, that the Agreements are "contracts of adhesion" because the defendants "collected the wire transfers before" executing the Agreements and the consulting fees were non-refundable. Pls.' Resp. Br. at 7. Neither fact, at least without further explanation, concerns the parties' relative bargaining power or whether the terms of the Agreements were difficult to understand. And even if the Agreements were contracts of adhesion, that fact alone "does not automatically defeat enforceability." *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 423 (7th Cir. 2015); *see also Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 26, 857 N.E.2d 250, 266 (2006) (observing that contracts of adhesion "are a fact of modern life" and that not "all such contracts are so procedurally unconscionable as to be unenforceable").

As for substantive unconscionability, the plaintiffs contend that the Agreements' liquidated damages provisions constitute an unenforceable penalty, but they do not explain how that affects the arbitration provision. Section 13(D) of the Agreements states that "[i]f any provision is held to be invalid or unenforceable for any reason, the remaining provisions will continue in full force and effect." 2d Am. Compl., Ex. 3–6 at 8, Ex. 7–9 at 5. Therefore, even assuming the liquidated damages provisions are

inordinately one-sided, section 13(D) provides for severability of that provision, with the arbitration clause remaining intact and enforceable. *See Kinkel*, 223 Ill. 2d at 47, 857 N.E.2d at 277–78 ("[T]he existence of a severability clause and the strong public policy in favor of enforcing arbitration agreements weigh in favor of enforcing the arbitration clause without the offending [provision]."); *Breuder v. Bd. of Trustees of Cmty. Coll. Dist. No. 502*, 888 F.3d 266, 269 (7th Cir. 2018) ("Courts in Illinois regularly refuse to enforce particular clauses—say, those creating penalties . . . —while enforcing the remainder of the contracts."); *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 757 (N.D. Ill. 2015) ("[T]he remedial limitation provisions in this case are severable because (1) the unconscionable terms do not affect the intent of the Franchise Agreement's arbitration provision overall, (2) the parties included a severability clause in the Franchise Agreement, and (3) the 'strong policy in favor of enforcing arbitration agreements [is] best served by allowing the valid portions of the arbitration agreement to remain in force while severing the unconscionable provision.'" (alteration in original) (quoting *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 238, 882 N.E.2d 157, 179 (2008))). The Court concludes that the plaintiffs have failed to establish that the mandatory arbitration clause is unenforceable.

**3. Refusal to arbitrate**

The plaintiffs do not dispute that their claims fall within the scope of the arbitration agreement or that they have refused to arbitrate. The Court therefore grants the defendants' motion to dismiss with respect to the plaintiffs who are signatories to the Agreements. Dismissal is appropriate under the doctrine of *forum non conveniens*, not Rule 12(b)(3). *See Rock Hemp*, 51 F.4th at 701 ("While Appellees brought their motion

pursuant to Rule 12(b)(3) for improper venue, as the district court recognized, the doctrine of *forum non conveniens* is the correct procedural mechanism to enforce an arbitration clause.") (alterations accepted) (internal quotation marks omitted); *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 560–61 (7th Cir. 2021) (holding that the defendant "should have brought a motion under the forum non conveniens doctrine to enforce" the arbitration agreement, but "whether [the plaintiff]'s motion is analyzed as one under Rule 12(b)(3) or one under forum non conveniens does not impact the substantive analysis").

**4. Parkcam**

This leaves Parkcam, whom the defendants do not contend signed an Agreement. The defendants make a conclusory contention that Parkcam should be bound by the Agreements' arbitration clause, but they make no effort to develop the point. The defendants note that Hanc, who is a member of the other plaintiff entities, is also the sole member of Parkcam. That doesn't carry the day. The defendants cite *Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002), for the proposition that "there are several ways that a non-signatory can be bound by a contractual arbitration provision, such as through the doctrines of assumption, agency, equitable estoppel, veil piercing, and incorporation by reference," but they make no effort to explain how any of these doctrines might apply in this case. Defs.' Opening Mem. at 12. The Court concludes that the defendants have forfeited the point. *See Rock Hemp*, 51 F.4th at 704 ("Seventh Circuit precedent is clear that perfunctory and undeveloped arguments . . . are waived.") (internal quotation marks omitted). It is not until the reply that the defendants contend that Parkcam should be

"equitably estopped from denying its obligation to arbitrate." Defs.' Reply Br. at 9. But "arguments raised for the first time in a reply brief are waived." *Williams v. Bd. of Educ. of City of Chi.*, 982 F.3d 495, 507 n.30 (7th Cir. 2020).

Even if the defendants had not forfeited this argument, it would fail on the merits. Under Illinois law, "[a] claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 641 (7th Cir. 2021) (quoting *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 514, 812 N.E.2d 534, 541 (2004)). As in *Sosa*, the defendants in this case have "failed to present any evidence of [their] detrimental reliance on any . . . representation" by Parkcam that it had agreed to arbitrate its claims "as required by Illinois law." *Sosa*, 8 F.4th at 641.

The defendants' reliance on *Gersten v. Intrinsic Technologies, LLP*, 442 F. Supp. 2d 573 (N.D. Ill. 2006), is unavailing. First, the court in *Gersten* applied "federal substantive law" in its equitable estoppel analysis. *Gersten*, 442 F. Supp. 2d at 578. But, applying *Arthur Andersen*, the Seventh Circuit has subsequently held that equitable estoppel must be analyzed under state contract law and has noted that "the Illinois Supreme Court has reaffirmed its longstanding detrimental reliance standard in equitable estoppel claims." *Sosa*, 8 F.4th at 637, 642 (citing *In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 25, 28 N.E.3d 776, 785).

Even under federal caselaw, there must be "a *direct* benefit under *the contract containing an arbitration clause* before a reluctant party can be forced into arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005); *see Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (holding that,

where a non-signatory purchased a company that had a prior supply contract containing an arbitration clause with the defendant, the non-signatory's benefit from the purchase, without seeking to enforce the terms of the contract, was insufficient to bind it to the arbitration agreement under an estoppel theory). In this case, even if Parkcam benefited from the Agreements by receiving replacement stores as the defendants contend, it is not seeking to enforce the terms of the Agreements but rather is basing its claims on the distinct terms of its alleged oral agreements with the defendants that "differed materially." Pls.' Resp. Br. at 11. Accordingly, Parkcam cannot be bound to the arbitration agreement based on a "direct benefits" estoppel theory. The defendants cite *Sanchez* in their reply for the proposition that "courts regularly allow non-signatory entities to enforce an arbitration agreement against a signatory on the basis of equitable estoppel." Defs.' Reply Br. at 9 (quoting *Sanchez*, 78 F. Supp.3d at 757). But "the situation here is inverse: [the defendants], as signatory, seek[] to compel [Parkcam], a non-signatory." *Thomson-CSF*, 64 F.3d at 779 (internal quotation marks omitted). This distinction is significant because, unlike a signatory seeking to avoid arbitration, "[a]t no point did [Parkcam] indicate a willingness to arbitrate." *Id.* (holding that cases estopping a signatory were "inapposite and insufficient justification for binding [the plaintiff] to an agreement that it never signed").

In sum, Parkcam is not bound to the Agreements' arbitration clause. The Court accordingly denies the defendants' motion to dismiss Parkcam's claims for improper venue and their alternative motion to compel arbitration of Parkcam's claims and stay proceedings.

**B. Failure to state a claim**

The defendants have also moved to dismiss Parkcam's claims under Rule 12(b)(6). The defendants contend, without citing any legal authority, that Parkcam's breach of contract claim should be dismissed because Parkcam "does not plausibly allege the existence of any oral contract to which it was a party" and that its remaining claims should be dismissed because it failed to allege that it "lost any investment or suffered any damages." Defs.' Opening Mem. at 13–14. Because both arguments are undeveloped and devoid of any supporting caselaw, the Court finds them forfeited. *See Rock Hemp*, 51 F.4th at 704 ("Seventh Circuit precedent is clear that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted).

Even were the arguments not forfeited, they lack merit. To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court views the complaint "in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Under this standard, Parkcam has plausibly alleged the existence of two oral contracts. Parkcam alleges that "it and Hanc Holdings reached an agreement with Defendants whereby Defendants would transfer an aged store to Parkcam, LLC's possession and negotiated [a] 70% profit sharing plan in Parkcam, LLC's favor." Pls.' Resp. Br. at 14 (citing 2d Am. Compl. ¶¶ 124–125). Parkcam also alleges that the defendants "agreed to transfer the investment made in Redstone, LLC to Parkcam, LLC

after failing to comply with Walmart's procedures." *Id.* (citing 2d Am. Compl. ¶¶ 207–220). Though the operative complaint is not a model of clarity, additional details are unnecessary at this stage. *See Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*, No. 11 C 2051, 2011 WL 3876947, at *12 (N.D. Ill. Sept. 1, 2011) ("A plaintiff need not plead all the specific details underlying an alleged breach of contract to state a claim."); *ReceiverShip Mgmt., Inc. v. A.J. Corso & Assocs., Inc.*, No. 19 C 01385, 2021 WL 1222897, at *16 (N.D. Ill. Mar. 31, 2021) ("It is not necessary at this stage that the [plaintiff] plead specific facts regarding the exact date the contracts were entered into, or the particulars of the alleged terms.").

The defendants briefly contend that the operative complaint lacks "detail to demonstrate that the alleged oral contract satisfied the Statute of Frauds." Defs.' Opening Mem. at 13. They do not clarify whether they are referring to the statute of frauds under Illinois law or the UCC. The plaintiffs assume the latter, arguing that the UCC statute of frauds does not apply in this case because the oral contracts were for "consulting fees," not "goods." Pls.' Resp. Br. at 15 (citing U.C.C. § 2-105). The defendants do not dispute this in their reply brief and thereby have conceded the point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[F]ailure to respond to an argument . . . results in waiver."). Even assuming the defendants intended to invoke the generally-applicable Illinois statute of frauds, that is an affirmative defense, *see Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997), and it would only apply in this case if the contracts were "not capable of being performed within a year," *Church Yard Commons Ltd. P'ship v. Podmajersky, Inc.*, 2017 IL App (1st) 161152, ¶ 27, 76 N.E.3d 96, 103; *see* 740 ILCS 80/1. Because the plaintiffs' factual allegations do not

"unambiguously establish all the elements of the defense," dismissal under Rule 12(b)(6) would be inappropriate. *Huson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).

Parkcam has also sufficiently alleged damages. As Parkcam emphasizes in response to the defendants' motion, it alleges in its complaint that its lost revenue was $18,000 and that the defendants made additional unauthorized purchases on Parkcam's credit card of $3,500. In reply, the defendants again do not dispute that these allegations are sufficient to plausibly allege damages. The Court accordingly denies the defendants' motion to dismiss Parkcam's claims for failure to state claim.

Rather than continue to contest the existence of damages, the defendants contend in reply that Parkcam's claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction "given Parkcam's admitted failure to satisfy the amount in controversy requirement of 28 U.S.C. § 1332." Defs.' Reply Br. at 10. The contention lacks merit. "It is well established that the requirements for diversity jurisdiction must be satisfied only at the time a suit is filed." *Grinnell Mut. Reins. Co. v. Shierk*, 121 F.3d 1114, 1116 (7th Cir. 1997). "[I]f the amount in controversy exceeds the jurisdictional amount when a suit is filed in federal court, the fact that subsequent events reduce the total amount in controversy will not divest the court of diversity jurisdiction." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289–90 (1938)). The amount in controversy requirement was plainly met at the time the suit was filed; the defendants do not argue otherwise. Moreover, Parkcam also seeks punitive damages, "which factor into the amount-in-controversy calculation." *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 582 (7th Cir. 2017) (observing that "courts in Illinois have

affirmed jury awards for fraud with multipliers higher than five"). The Court therefore declines to dismiss the remaining claims for lack of subject matter jurisdiction.

**Conclusion**

For the reasons stated above, the Court dismisses the claims of all plaintiffs other than Parkcam based on the doctrine of *forum non conveniens* but declines to dismiss Parkcam's claims [dkt. no. 27]. The parties are directed to confer regarding an appropriate discovery and pretrial schedule regarding Parkcam's claims and are to file a joint status report with a proposed schedule by no later than February 3, 2023. The case is set for a telephonic status hearing on February 8, 2023 at 9:05 a.m., using call-in number 888-684-8852, access code 746-1053.

MATTHEW F. KENNELLY
United States District Judge

Date: January 27, 2023